Good morning, if it pleases the court. Robert Chekatov for the defendant. Initially, I want to say, because my sister suggests strategic reasons throughout her brief for why a trial counsel might have done this, that, or the other thing. Reading this transcript, I don't see any strategy for the defense at all. I don't see any strategic reasoning, any strategic planning, or any strategy of any kind. The first issue I want to address is the use of the guilty plea. After hearing the government open and state that they had a cooperating witness, Dr. Wilking, who was going to testify, the defense counsel opened and told the jury that at the end of the day, they could believe Dr. Wilking, which I think is a perfect example of a lack of strategy. I've never seen that before, but the defense lawyer saying in his opening that you're going to believe the cooperating witness in any event. But didn't defense counsel then go on to say, but I'm going to give you, not in the opening, but in essence during the trial, during the cross-examination, but I'm going to give you reasons why you shouldn't credit his testimony. That is, he's testifying subject to a plea. He's doing this for his own benefit. And wasn't there also a suggestion that he was the mastermind, this doctor, and not your client? Yes, that's all correct, Your Honor. I don't dispute any of that. But to me, that shows no strategy. So you may have an ineffective assistance claim later. It's not presented in this case, nor would you want it to be. You'd want to develop some evidence. But given all of that, what is the appellate claim that you're pursuing here at oral argument? Okay, so I want to address the first claim in my brief, which is that Dr. Wilking, over objection, was allowed to testify that he had pled guilty to health care fraud. And the fact that an objection was posited to that question suggests to me that the suggestion by the government that he then allowed it to come in purposefully for its substantive use makes no sense, because why would you object? And so the real issue it seems to me here, initially for me, is Rule 105 of the Federal Rules of Evidence. My position, because defense counsel did not, trial counsel did not ask for a limiting instruction, my position is that the case law in this circuit, since Dworkin in 1988, is that this evidence is inadmissible because of its clear suggestion of guilt by association, unless there is a limiting instruction. This is not an instruction that somebody has to request. This is an instruction that the court must give if it's going to overrule an objection to this question. And there was no limiting instruction at any point at any time. And I argue that this is prejudicial, not just because it's the natural tendency of this evidence to spill over and suggest that if this person is guilty of the same crime as the other people are charged with, they're guilty of it too. Counsel, there was something of a limiting instruction. The court did suggest that Dr. Wilkin's testimony should be carefully scrutinized, he'd entered into a plea agreement, he might have a motive to testify in a way that would allow the government to look favorably on the way in which he had cooperated. Now, it's not exactly the instruction that you have in mind, but nevertheless, at least as to his overall credibility, there was an instruction given, was there not? Right, but that is correct, Your Honor. And it does have a tendency to tell the jury, more than a tendency to tell the jury, you have to question this person's credibility. But the instruction that this court requires is an instruction that says the fact that he pled guilty is pertinent only to his guilt and may not be taken as any indication of the guilt of any other defendant. It's not evidence of the guilt of any other defendant, it's only evidence on the issue of his credibility and not evidence against anyone else. So I don't think those are the same instructions. And I don't think there's any strategic reason why a lawyer would want this evidence in substantively, because its only tendency substantively is to suggest that the defendant on trial is guilty also. Okay, so if we don't accept the government's waiver position, it becomes a plain error issue, so how do you meet that? Okay, I don't even think it's a, respectfully, Your Honor, I think I'm in a better position than plain error, because it's my view that you do not have to request a limiting instruction. The objection to that question cannot be overruled without a limiting instruction. And I believe that's the law of the circuit, that you cannot, as the trial judge say, overrule and not give a limiting instruction. This evidence is inadmissible without a limiting instruction. And it was, I suggest, used by the prosecution substantively on at least two occasions, both of which are detailed, but as the government says, not fully explained in my brief. I think they're self-explanatory. The prosecutor said, in questioning the doctor on the witness stand, he asked him first, what did you do that caused you to plead guilty? And he detailed the various regulations and things of that nature that he violated. And then he said, who else was involved in the fraud that you pled guilty to? So exploiting the substantive suggestion that if you pled guilty, who else was involved and was also guilty, and you can infer that from the fact that you pled guilty. Was the problem the use of the phrase that you pled guilty to? Suppose the prosecutor had simply said, who else was involved in the fraud? I think that would have been perfectly fine, Your Honor. Thank you. I think that's true with a lot of the things that I suggest here. That it's not that there was no way to get this stuff in. I mean, this guy is an eyewitness. He can say things. And through his own testimony, he is a co-conspirator. Yes? Yes. But you can't try and bolster that with the suggestion that you pled guilty, and that's somehow substantive proof that the others are guilty, too. And the second occasion was in closing argument when the prosecutor said, talking about Dr. Wilking, he took responsibility for his part in the scheme. Suggesting that, you know, that guilty plea was him taking responsibility, and the others didn't take responsibility, even though he clearly admitted that he was involved, and therefore they were, too. So, I think I'm in a better position than plain error, but no matter what the standard is, the issue is always going to boil down to overwhelming evidence of guilt or not. But, counsel, I guess even if we were to accept your position that there's an error of law by the judge, there's still a plain error analysis to be done. Your position is that if it's an error of law, it follows inevitably from that that we have to vacate the judgment. Is that your position? No, that's not my position. I would like to adopt that position. Someday, maybe I'll sell it to this court. I doubt it. But I'm just saying that the measure of what is error is a little bit better for me if it's an objected-to issue than if you're reaching it only on plain error. Thank you. Good morning, Your Honors. I may place the Court. Kelly Lawrence for the United States.  I think it's important for court cases to suggest that there's no obligation for the defense to object if a limiting instruction isn't given, even in this circumstance. We recognize that in Dworkin, Foley, Torres-Colón, some recent cases that the Court has said that a cautionary instruction should be given, but that's not the same as saying that if it isn't, there's no plain error review. And even if the Court were to reach that issue and decide in this case that that is the rule, which I don't believe this case presents that situation, there would still be a harmless error analysis, which is what the Court applied in Torres-Colón. So recognizing either it's plain error and the defendant has to show the effect on his substantial rights under Prong 3 and fundamental unfairness under Prong 4. Is there any circuit which adopts rules such as Mr. Sheketoff says we've adopted in Dworkin? Not that I'm aware of, Your Honor, but I can't say that I've looked for every circuit. Just as a factual matter, was Dr. Wilkins indicted separately from... He was, Your Honor, and he was indicted on a charge of health care fraud, not conspiracy, and he pleaded guilty to one count of health care fraud. And I would note, too, that the defendant did not object to the admission of the guilty plea itself into evidence, even though the Court indicated it wouldn't be admitted substantively. So that was a choice, strategic choice, that defense counsel made at the time. The Court said, no, I won't admit the plea agreement, which attached to it was the information, which was the charging document against Dr. Wilking. And the defense said, I have no problem with that. And the government's reading of the transcript suggests that that might have been an intentional decision, given the way the cross-examination and the closing argument played out, which was the defense attacked Dr. Wilking's credibility vigorously and also created a theory for the jury, an argument for the jury, that he had acted alone. He asked numerous questions of Dr. Wilking, trying to isolate his conduct to say, did you tell the defendant that you were signing these forms, that you needed help because you were feeling overwhelmed? He tried to create a situation and an argument for the jury where he could distance himself from Dr. Wilking and what he had done. And that seemed to be his theory of the case, and that was certainly presented to the jury in that way in closing. So that's the reason for the government's argument that there could have been a strategic choice. And in light of that, it wouldn't have been proper for the District Court to have sua sponte offered a limiting instruction. It could have done more harm than good to the defense. Actually, this is quite an interesting question, and I don't know the answer. Perhaps you do. Is the test, it could have been a strategic choice, or it's obvious to the Court of Appeals that it was a strategic choice? The language that I read in this Court's cases suggests that the reason that this Court does not place a burden or an obligation on the District Court to sua sponte offer limiting instructions is that it could interfere with a plausible strategic choice by defense counsel. I believe that's the language. So whether it could, should, or whatever standard that is, I think plausible strategic choice. And, of course, the District Court is presiding over trial and listening to the evidence and hearing what's happening, but it wouldn't be proper necessarily to jump in at any moment based on its own thoughts about how the trial should go. Counsel, I wonder if I could ask you a question. Mr. Checkertop did not address this in his oral argument. I'm talking about the issue of the expert witness, LA witnesses who spoke about the Medicare regulations and how they apply to home health care. In your brief, you seem to draw a distinction between testimony, say, by Stephanie Fox in which she describes the requirement. She was there to explain what Medicare requires in this area, but she wasn't there to interpret or explain the meaning of those regulations. To me, that's a very subtle distinction, and I'm not sure I understand it. What's the difference between telling a jury, hearing the regulations, this is what they require a provider to do, but not then giving some interpretation, some elaboration of the meaning? You seem to draw that distinction, and I'm not sure I understand it. The distinction the government is needing to draw is likely between stating what the regulation is, which is essentially what she did when she was asked, what does homebound mean? To do that, she just read the regulation and did nothing more than that? The court made clear that he would not permit Ms. Fox to testify about her opinion, even as an expert, although he determined her to be qualified. He did not want her to give an opinion about whether the defendant had committed fraud, which was the ultimate issue in the case. He said she could, however, be used by the government to introduce all of these various regulations and definitions to the jury and to describe the landscape under which this company, the defendant's company, operated. So she was asked to read the definitions, and she did. She was also asked to explain how Medicare billing procedures work, what the defendant had acknowledged in signing up to be a Medicare home health care provider. She simply explained to the jury how the system works, and she was not permitted to do more. So that's the reason for drawing that distinction in our brief, is that she really didn't testify as to an opinion, which is different from, of course, the other witnesses who did provide opinion, but as lay witnesses based on their firsthand knowledge. And what was the nature of the opinion testimony that they provided? So they were asked, and there are different categories. There were some nurses whose testimony was challenged. There was one patient and, I believe, two, maybe three primary care providers. And again, these are different witnesses, and they were asked different questions. But in general, the testimony proceeded as, to the nurse, did you visit this patient? What did you observe? I observed that he wasn't home, for example, when I arrived, or that he had gone on vacation to Puerto Rico for a month to visit his family. And then the question would be, essentially, was he homebound? And the nurse would testify, no. So that's the opinion of the nurse as to homebound. But also, as noted in our brief, that nurse had no knowledge of what Medicare's definition of homebound meant. And it wasn't put to her, the question was not put to her as, you know what Medicare means, therefore can you tell us whether for sure this is a person who's homebound or not. And so their testimony that these witnesses were not homebound, if they were not offering an opinion on what that means under the Medicare regulation, that's the issue in the case. Was there a debate with these people? Did the defendants understand that they were acting contrary to what the Medicare regulations require? The purpose of the testimony, and the court explained this at one point when defense objected to this, to a question like that. And as the court explained, and as the government believes in offering this evidence, the point was to give some context for what the nurses and the patients and the primary care physicians' opinions were, and what their facts were that they observed. So the nurses talked about the patients and how they saw them, when they saw them, and then the jury was also presented with the OASIS patient assessment forms that seemed to reflect something different. So in order for the jury to understand how the observations of the nurses and how the patients themselves felt, and to compare that to what was reflected on the forms, it was helpful to the jury to hear how the nurses viewed the patient, and how the patient viewed him or herself. So that's the purpose of the testimony, simply to provide context for the jury's analysis. And the court also made abundantly clear that it was the final arbiter of any issue of law, and that it would be instructing as it did on the meaning of these health care questions. Counsel, this is a good hypothetical acknowledgment, and I think it would be useful to know your response. Suppose the defense had asked to call an expert witness who would testify to his or her understanding of what these Medicare regulations mean, require, in order to establish that the defendant could well have had a good faith belief that what they were doing was consistent with regulation. Maybe there's some ambiguity in the regulations, they're very complex. What would the government's position have been if the defense had wanted to present an expert who would give that testimony about the expert's understanding of the meaning, interpretation of the regulations? That, in fact, happened in this case. The defense proposed an expert, Dr. Marmer, I believe his name was, and submitted him as, if I recall correctly, to be that person to opine on the meaning of these regulations. What happened, however, was that the government opposed that, not because it wouldn't have been proper in general, but that this particular witness proposed was not qualified because he didn't have sufficient experience in Medicare home health care regulations. So he was not an expert in that field, which is why the district court, after a deliberate hearing, did not permit him to testify. But simply offering that kind of competing expert testimony, the government would not object to that, I think that would be proper. Thank you.